IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CR-9-D

UNITED STATES OF AMERICA )
)
)
v. ) **ORDER**
)
WAYNE DWIGHT SIMMONS, )
)
Defendant. )

On July 13, 2020, Wayne Dwight Simmons ("Simmons" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582), filed records in support, and moved for appointment of counsel [D.E. 63]. On January 24, 2021, Simmons, through counsel, moved again for compassionate release and filed a memorandum and records in support [D.E. 68]. On February 5, 2021, the government responded in opposition [D.E. 70] and filed records in support [D.E. 71, 74]. As explained below, the court denies Simmons's motion.

I.

On July 6, 2010, with a written plea agreement, Simmons pleaded guilty to distribution of a quantity of cocaine. See [D.E. 1, 20, 21, 42]. On January 25, 2011, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 29, 30]; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Simmons' advisory guideline range as 188 to 235 months' imprisonment based on a total offense level 31 and a criminal history category VI. After granting the government's downward departure motion and thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Simmons to 204 months'

imprisonment. See [D.E. 30] 2. Simmons did not appeal.

On January 24, 2012, Simmons moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [D.E. 31, 34]. On April 22, 2013, the court dismissed Simmons's motion [D.E. 43, 44]. On May 9, 2013, Simmons moved for reconsideration [D.E. 45]. On July 29, 2013, the court denied Simmons's motion and denied a certificate of appealability [D.E. 46]. Simmons appealed [D.E. 47]. On January 24, 2014, the United States Court of Appeals for the Fourth Circuit denied a certificate of appealability and dismissed Simmons's appeal. See United States v. Simmons, 551 F. App'x 81, 81 (4th Cir. 2014) (per curiam) (unpublished); [D.E. 50, 51].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

2

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section]

---

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., id. at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Simmons contends that he has exhausted his administrative remedies, and that alternatively, section 3582's exhaustion requirement should be waived. See [D.E. 68] 3–4. The government does not invoke section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Simmons's claim on the merits.

Simmons seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Simmons cites the COVID-19 pandemic and his diabetes, hypertension, and kidney disease. See [D.E. 63]; [D.E. 63-3]; [D.E. 68] 3–4; [D.E. 68-2]. Simmons also cites the conditions at FCI Gilmer, his rehabilitation efforts, his release plan, and that only 46 months remain on his sentence at the time of his motion. See [D.E. 65]; [D.E. 68] 2–3, 14; [D.E. 68-1].

As for the medical condition of the defendant policy statement, the policy statement requires

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Simmons states that he suffers from diabetes, hypertension, and kidney disease, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Simmons serves his sentence. Moreover, Simmons has received two doses of the Pfizer BioNTech COVID-19 vaccine, greatly reducing Simmons's risk of suffering severe illness from COVID-19. See [D.E. 71, 73, 74]. Accordingly, reducing Simmons's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Simmons's health conditions, rehabilitation efforts, and release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Simmons's sentence. See Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Simmons is 51 years old and engaged in serious, prolonged criminal conduct from 2000 to 2010. See PSR ¶¶ 6–10. Simmons trafficked 18.228 kilograms of cocaine, 8.86 grams of cocaine base, and 53.1 kilograms of marijuana. See id. Simmons's criminal conduct follows a 1994 federal conviction for conspiracy to possess with intent to distribute cocaine base (crack) and cocaine. See id. ¶ 12. After serving a 30-month federal sentence, Simmons returned to his life as a drug dealer. See id. ¶¶ 6, 12. Sadly, Simmons learned nothing from his first trip to federal prison.

6

Case 2:10-cr-00009-D   Document 79   Filed 04/05/21   Page 6 of 8

Simmons is no stranger to the criminal justice system. In addition to his 1994 federal conviction and his 2010 federal conviction, Simmons has state convictions for driving while impaired, reckless driving to endanger, resisting a public officer, possession with intent to manufacture, sell, and deliver cocaine, and dog fighting. See id. ¶¶ 13–17. Nonetheless, Simmons has taken some positive steps while incarcerated and has no infractions. See [D.E. 65]; [D.E. 68] 2–3, 14; [D.E. 68-1].

The court has considered Simmons's exposure to COVID-19, his health conditions, his rehabilitation efforts, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Simmons, Simmons's vaccination against COVID-19, the section 3553(a) factors, Simmons's arguments, the government's persuasive response, and the need to punish Simmons for his serious criminal behavior, to incapacitate Simmons, to promote respect for the law, to deter others, and to protect society, the court declines to grant Simmons's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished).

As for Simmons's request for home confinement, Simmons seeks relief under the CARES Act. See [D.E. 68]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No.

7

4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). As such, the court dismisses Simmons's request for home confinement.

II.

In sum, the court DENIES Simmons's motion for compassionate release [D.E. 63, 68], and DISMISSES Simmons's request for home confinement.

SO ORDERED. This 5 day of April 2021.

JAMES C. DEVER III
United States District Judge

8

Case 2:10-cr-00009-D   Document 79   Filed 04/05/21   Page 8 of 8